Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DOMINIQUE MURRAY,

          Plaintiff,

        v.

LOUIS DEJOY, *et al.*,

          Defendants.

Civil Action No. 23-0423 (ES) (MAH)

OPINION

SALAS, DISTRICT JUDGE

      Before the Court is defendant United States Postmaster General Louis DeJoy's ("Defendant") motion to dismiss (D.E. No. 39 ("Motion" or "Mot.")) the Amended Complaint (D.E. No. 32 ("Amended Complaint" or "Am. Compl.")) filed by plaintiff Dominique Murray ("Plaintiff"), a former United States Postal Service ("USPS") employee.[1]  Plaintiff filed an opposition (D.E. No. 47 ("Opp. Br.")), and Defendant filed a reply (D.E. No. 50 ("Reply Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the following reasons, Defendant's Motion is **GRANTED**, and Plaintiff's Amended Complaint is **DISMISSED** *with prejudice*.

## I.    BACKGROUND

### A.    Factual Allegations

Plaintiff's Amended Complaint includes essentially the same factual allegations set forth

---

[1]    Plaintiff brought her original complaint against Defendant and USPS employees Yolanda Gross, Brandy Chisolm, and Tony Khairah, as well as fictitious defendants "John Does (1-10)," "Jane Does (1-10)," and "ABC Corp. (1-10)" (together, the "Fictitious Defendants").  (*See* D.E. No. 1 ("Complaint" or "Compl.")).  However, Plaintiff brings her Amended Complaint solely against Defendant and the Fictitious Defendants.  (*See* Am. Compl.).

in her initial Complaint. (*Compare* Am. Compl., *with* Compl.). In light of this, and in the interest of judicial economy and efficiency, the Court incorporates by reference the factual background set forth in its September 3, 2024 Opinion. (*See* D.E. No. 29 at 1–2).

**B.    Procedural History**

On January 25, 2023, Plaintiff initiated this employment retaliation and discrimination action by filing the Complaint against Defendant and USPS employees Yolanda Gross, Brandy Chisolm, and Tony Khairah, and asserting two causes of action: (i) alleged "Discrimination for Engaging in Protected Activity in Violation of 42 U.S.C. § 2000e-3," i.e., Title VII of the Civil Rights Act of 1964 (Count I); and (ii) alleged "Discrimination for Engaging in Protected Activity in Violation of 42 U.S.C. § 1983" (Count II). (Compl. at 2–4).

On January 22, 2024, Defendant, along with then-defendants Yolanda Gross, Brandy Chisolm, and Tony Khairah, jointly filed a motion to dismiss Plaintiff's Complaint (*see generally* D.E. No. 20), which the Court granted on September 3, 2024 (*see generally* D.E. No. 29; *see also* D.E. No. 30). The Court dismissed Plaintiff's Title VII claim against USPS employees Yolanda Gross, Brandy Chisolm, and Tony Khairah *with prejudice* but dismissed Plaintiff's remaining claims *without prejudice*. (*See generally* D.E. No. 29). The Court stated that Plaintiff's Title VII claim against the USPS employees had to be dismissed *with prejudice* "because Third Circuit jurisprudence is clear that individual employees, including supervisors, are not subject to liability under Title VII and because courts in this Circuit have consistently found official capacity suits against individual supervisory employees to be barred under Title VII[.]" (D.E. No. 29 at 6). With respect to Plaintiff's claims against Defendant, the Court found Plaintiff failed to state a Title VII claim against Defendant because she failed to allege that she was retaliated against due to complaints about conduct prohibited by Title VII. (*Id.* at 6–9). The Court found Plaintiff likewise

failed to state a § 1983 claim because she did not allege that any of the Defendants were acting under color of *state* law when they purportedly violated Plaintiff's constitutional rights and also did not allege any facts establishing a conspiracy between any of the Defendants and state officials. (*Id.* at 10–13). Because the Court dismissed Plaintiff's claims on other grounds, the Court did not reach Defendants' additional argument that Plaintiff's Title VII claim should also be dismissed because she failed to exhaust her administrative remedies. (*Id.* at 9 n.3). The Court gave Plaintiff leave to file an amended complaint to cure the deficiencies outlined in its September 3, 2024 Opinion. (D.E. No. 30 at 1–2).

On October 2, 2024, Plaintiff filed the Amended Complaint against Defendant, including the same factual allegations as in the Complaint but reframing them as two new causes of action: (i) alleged "Retaliation for Engaging in Protected Activity" in violation of "5 U.S.C.A § 2302(b)(8) et seq.," i.e., the Whistleblower Protection Act (the "WPA") (Count I); and (ii) alleged "Discrimination for Engaging in Protected Activity" in violation of "Plaintiff's due process and First Amendment Rights under the U.S. Constitution"[2] (Count II). (Am. Compl. at 2–4[3]).[4]

On November 22, 2024, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot.; *see also* D.E. No. 39-1 ("Mov. Br.")).[5] On January 7, 2025, Plaintiff filed an opposition (Opp. Br.), and on January 23, 2025, Defendant filed a reply (Reply Br.). The Motion is fully briefed.

---

[2]    Plaintiff describes this cause of action as "First Amendment retaliation harassment" in her opposition to Defendant's Motion. (Opp. Br. at 1).

[3]    Because Plaintiff does not use consecutively numbered paragraphs in the Amended Complaint, pin cites to the Amended Complaint herein refer to the page numbers automatically generated by the Court's CM/ECF case management system. (*See generally* Am. Compl.).

[4]    Plaintiff seemingly abandons her Title VII and § 1983 claims asserted in her initial Complaint. (*Contrast* Compl., *with* Am. Compl.).

[5]    Defendant also submitted the declaration of Leslie Cedola, a Manager of EEO Services at USPS, and six exhibits in support of his Motion. (*See* D.E. Nos. 39-2 (Declaration of Leslie Cedola, dated Jan. 22, 2024 ("Cedola Decl.")) & D.E. Nos. 39-3 through 39-8).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal courts have limited jurisdiction and can adjudicate cases and controversies only as permitted under Article III of the Constitution.  *See* U.S. Const. art. III, § 2; *see also Phila. Fed'n of Tchrs. v. Ridge*, 150 F.3d 319, 322–23 (3d Cir. 1998) ("The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." (citation omitted)).  Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction.  *See Ridge*, 150 F.3d at 323 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)).  The party seeking to invoke federal jurisdiction has the burden of establishing subject matter jurisdiction.  *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  Under Federal Rule of Civil Procedure 12, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action."  Fed. R. Civ. P. 12(h)(3) (emphasis added).

"Rule 12(b)(1) governs jurisdictional challenges to a complaint."  *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016).  "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot."  *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).

A motion to dismiss under Rule 12(b)(1) "attacks [] the right of a plaintiff to be heard in Federal court."  *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999).  In deciding a 12(b)(1) motion, "a court must first determine whether the party presents a facial or factual attack because

the distinction determines how the pleading is reviewed." *Leadbeater v. JP Morgan Chase, N.A.*, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." *Id.* (citing *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A facial challenge "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law," or because there is no diversity of citizenship among the parties, or because there is some other jurisdictional defect. *Aichele*, 757 F.3d at 358. "In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). Thus, when a Rule 12(b)(1) motion is a facial attack, it is handled much like a Rule 12(b)(6) motion, and allegations in the complaint must be accepted as true. *Leadbeater*, 2017 WL 4790384, at *3. On the other hand, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Perry v. OCNAC #1 Fed. C.U.*, 423 F. Supp. 3d 67, 73 (D.N.J. 2019) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also Aichele*, 757 F.3d at 358 (explaining the differences between a facial attack and a factual attack under Rule 12(b)(1)).

Here, Defendant's attack appears to be facial (*see* Mov. Br. at 12–17), and accordingly the Court will only consider the allegations in the Amended Complaint and the documents incorporated by reference or integral to Plaintiff's claims therein in determining whether it has subject matter jurisdiction over Plaintiff's claims.

### B.    Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (citation omitted). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id*. at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate*

*Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004))).  Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).  This includes an Equal Employment Opportunity Commission ("EEOC") complaint and any related documents, which courts may consider as "undisputed documents referenced in the complaint," documents "central to plaintiff's claim, or as information which is a matter of public record," without converting a Rule 12(b)(6) motion into one for summary judgment."  *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000); *see also Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (finding "[t]he Magistrate Judge and District Court properly relied on [the former USPS employee plaintiff's] EEOC file, which [he] referenced in his complaint and which is integral to his claim"); *Baig v. Nuclear Regul. Comm'n*, No. 10-0842, 2011 WL 2214660, at *5 (D.N.J. June 6, 2011) (examining a plaintiff's EEOC complaint and related documents at motion to dismiss stage to determine whether plaintiff had exhausted administrative remedies prior to filing suit in the district court).

Here, Plaintiff references her EEOC complaint in her Amended Complaint (*see* Am. Compl. at 2), and while she did not attach an EEOC complaint to her Amended Complaint, she previously submitted a copy of her EEOC complaint to the Court as an attachment to an unrelated motion not addressed herein.  (*See* D.E. No. 12 at 25–32).  Defendant also attached a copy of Plaintiff's EEOC Complaint to its Motion to Dismiss.  (*See* D.E. No. 39-5 ("EEOC Complaint" or "EEOC Compl.")).  Thus, the Court may properly consider Plaintiff's EEOC Complaint and related EEOC documents

as "undisputed documents referenced in the complaint or central to the plaintiff's claim" without converting Defendant's Motion to one for summary judgment. *See Rogan*, 113 F. Supp. 2d at 782.

## III.    DISCUSSION

For the reasons set forth below, the Court finds that Plaintiff's Amended Complaint must be dismissed for lack of subject matter jurisdiction, failure to state a claim, and/or failure to exhaust administrative remedies.

### A.    Plaintiff's WPA Claim (Count I)

In Count I of the Amended Complaint, Plaintiff alleges unlawful retaliation for engaging in protected activity in violation of the WPA. (Am. Compl. at 2–3). Specifically, Plaintiff alleges "[u]pon information and belief" that on January 26, 2022, her former supervisor, Yolanda Gross, "sent [her] to do overtime on the Danny Vip machine in the work area where the employees who Plaintiff reported that were stealing time were located" and where USPS employee Brandy Chisolm subsequently yelled at Plaintiff and threatened to slap her. (*Id.* at 3). Plaintiff then alleges, again "[u]pon information and belief," that on or about February 22, 2022, Defendant told Plaintiff she was being removed from the USPS, effective March 20, 2022, for the January 26, 2022 altercation. (*Id.*). Plaintiff states that "Brandy Chisolm was among the employees that Plaintiff reported was stealing time" and that "Yolanda Gross set her up to be confronted and threatened by Brandy Chisolm" and placed her in that work area "in retaliation for Plaintiff engaging in a protected act." (*Id.*). Plaintiff alleges these retaliatory actions constitute a WPA violation. (*Id.*).

Defendant argues Plaintiff's WPA claim should be dismissed for a lack of subject matter jurisdiction because the WPA does not apply to the USPS or its employees and, as such, Plaintiff is barred from seeking relief under the WPA. (Mov. Br. at 12–15). In opposition, Plaintiff does not refute this argument and instead contends she plausibly alleged a prima facie case of retaliatory

discrimination for engaging in a protected activity. (Opp. Br. at 6–10). However, in support of this assertion, Plaintiff cites the elements of a prima facie case for a Title VII retaliation claim, not a WPA retaliation claim. (*See id.* at 6–7). In other words, Plaintiff does not dispute, and arguably concedes, that the WPA does not apply to the USPS or its employees. In reply, Defendant states Plaintiff fails to address his argument that she is barred from seeking relief under the WPA, which expressly excludes the USPS and its employees from its provisions and which courts have so held, and thus Defendant reiterates the Court should dismiss that claim. (Reply Br. at 1–3). For the reasons set forth below, the Court agrees with Defendant and finds that Plaintiff's WPA claim must be dismissed for lack of subject matter jurisdiction.

"The WPA protects federal employees against agency reprisal for whistleblowing activities, such as disclosing illegal conduct, gross mismanagement, gross waste of funds, or acts presenting substantial dangers to health and safety." *Fleeger v. Principi*, 221 F. App'x 111, 115 (3d Cir. 2007) (citing 5 U.S.C. § 2302(b)(8)). Under the WPA, a "personnel action" may be brought by an "employee in . . . a covered position in an agency" or "an employee . . . in a Government corporation." 5 U.S.C. § 2302(a)(2)(A)(xii). An "agency" is defined as an "Executive agency," 5 U.S.C. § 2302(a)(2)(C), which is further defined as "an Executive department, a Government corporation, and an independent establishment." 5 U.S.C. § 105.[6] Additionally, § 2105(e) provides that "[e]xcept as otherwise provided by law, an employee of the United States Postal Service or of the Postal Regulatory Commission is deemed ***not*** an employee for purposes of this

---

[6]    5 U.S.C. § 101 constrains the definition of "Executive department" to an exhaustive list of several governmental departments, which excludes the USPS. *See* 5 U.S.C. § 101. Similarly, in defining "Government corporation," 5 U.S.C. § 2302(a)(2)(A)(xii) cross-references 31 U.S.C. § 9101, which contains an exhaustive list of "mixed-ownership Government corporation[s]" and "wholly owned Government corporation[s]" that excludes the USPS. *See* 5 U.S.C. § 2302(a)(2)(A)(xii); 31 U.S.C. § 9101(1)–(3). Additionally, the statute defines an "independent establishment" as "an establishment in the executive branch (***other than the United States Postal Service or the Postal Regulatory Commission***)." 5 U.S.C. § 104(1) (emphasis added).

title." 5 U.S.C. § 2105(e) (emphasis added). Thus, the plain statutory language of the WPA reflects that the Act does not apply to the USPS or its employees. *See, e.g.*, *Hickok v. U.S. Postal Serv.*, No. 04-0573, 2006 WL 3760137, at *6 (D. Utah Dec. 18, 2006) ("From a plain reading of the [WPA] it is clear that the USPS is not covered by the Act.").

Indeed, courts in the Third Circuit have held that the WPA does not apply to the USPS. *See Madden v. Runyon*, 899 F. Supp. 217, 225 (E.D. Pa. 1995) (explaining "the Postal Service is not subject to the WPA" and granting summary judgment for USPS and Postmaster General on USPS employee's WPA claim); *see also Kassin v. U.S. Postal Serv.*, No. 11-1482, 2011 WL 6002836, at *2 (D.N.J. Nov. 30, 2011) (noting federal contractor's whistleblower retaliation claims against USPS cannot fall under the WPA "because that Act does not apply to the Postal Service").

Courts outside the Third Circuit have similarly held the WPA does not apply to the USPS. *See McDermott v. Donahoe*, 465 F. App'x 686, 687 (9th Cir. 2012) ("The district court properly dismissed [a USPS employee's] claims under the WPA because it does not apply to the United States Postal Service." (citations omitted)); *Nazario-Acosta v. Potter*, 140 F. App'x 657, 658 (9th Cir. 2005) ("The district court properly concluded that [the plaintiff] could not bring a claim under the Whistleblower Protection Act because the Act does not apply to the Postal Service."); *dela Cruz v. Brennan*, No. 19-1140, 2019 WL 13073479, at *3 (N.D. Cal. Nov. 4, 2019) ("Plaintiff's purported claims under the WPA are not cognizable, as that statute does not apply to the USPS."); *Mallard v. Brennan*, No. 14-0342, 2015 WL 2092545, at *8 (D. Me. May 5, 2015) (dismissing USPS employee's WPA claim against Postmaster General for lack of subject matter jurisdiction because USPS employees are not covered by the WPA); *Dev v. Donahoe*, No. 12-3026, 2014 WL 12772202, at *2 (E.D. Cal. Apr. 22, 2014) (concluding a USPS employee plaintiff "cannot maintain his claim for violation of the Whistleblower Protection Act" because "[t]hat act does not

10

apply to the United States Postal Service." (citations omitted)); *Eastman v. Donahoe*, No. 10-0906, 2011 WL 5374729, at \*6 (E.D. Mo. Nov. 8, 2011) ("Because the [WPA] is not applicable to the Postal Service, plaintiff, a Postal Service employee, cannot bring an independent action against the Postal Service under the Act based on whistle blowing activities.").

Similarly, Federal Circuit cases reviewing administrative appeals of WPA claim dismissals brought by USPS employees have also held the WPA does not cover claims by USPS employees against the USPS. *See Booker v. Merit Sys. Prot. Bd.*, 982 F.2d 517, 519 (Fed. Cir. 1992) (affirming Merit Systems Protection Board's ("MSRB") decision to dismiss USPS employee's WPA claim against USPS for lack of jurisdiction because WPA claims may not be brought against the Postal Service), *cert. denied*, 510 U.S. 862 (1993); *see also Cyr v. Merit Sys. Prot. Bd.*, No. 00-3217, 2000 WL 1480605, at \*1 (Fed. Cir. Oct. 6, 2000) (per curiam) (affirming MSRB's dismissal of USPS employee's WPA claim against USPS because "the Postal Service is not an agency for the purposes of title 5" (citing *Booker*, 982 F.2d at 519)); *Dancer v. Merit Sys. Prot. Bd.*, No. 96-3366, 1997 WL 14049, at \*1 (Fed. Cir. Jan. 16, 1997) (per curiam) (same).

Thus, it is clear based on the plain statutory language of the WPA and the relevant legal authority that the WPA does not apply to the USPS or its employees. Here, Plaintiff was, at all times relevant to this lawsuit, a USPS employee (*see generally* Am. Compl.), and as such, she cannot maintain a lawsuit against Defendant under the WPA because the WPA does not apply to the USPS. Accordingly, Plaintiff's WPA retaliation claim must be dismissed.

Therefore, Defendant's Motion is **GRANTED** as to Plaintiff's WPA retaliation claim, and accordingly Count I of the Amended Complaint is **DISMISSED** for lack of subject matter jurisdiction.[7]

---

[7]    Because the Court dismisses Plaintiff's WPA claim for lack of subject matter jurisdiction, it does not reach and need not address whether she alleged facts sufficient to survive dismissal under Rule 12(b)(6) for this claim. *See,*

### B.    Plaintiff's Constitutional Claims (Count II)

In Count II of the Amended Complaint, Plaintiff alleges "Discrimination for Engaging in Protected Activity in Violation [of] Plaintiff's due process and First Amendment Rights under the U.S. Constitution." (Am. Compl. at 4). Specifically, Plaintiff alleges the retaliatory acts of Defendant and USPS employees Yolanda Gross, Tony Khairah, and Brandy Chisolm violated her constitutional rights—specifically, her right to free speech and to petition the government for redress of grievances under the First Amendment, and her right to substantive due process and to petition the government for redress of grievances under the Fourteenth Amendment. (*Id.*).

Defendant argues Plaintiff's constitutional claims should be dismissed for lack of subject matter jurisdiction because Plaintiff fails to identify any statutory provision that waives the USPS's sovereign immunity for lawsuits seeking damages based on constitutional claims. (Mov. Br. at 15–17). Accordingly, Defendant contends the Court lacks subject matter jurisdiction over any of Plaintiff's constitutional claims seeking damages from Defendant in his official capacity. (*Id.* at 17). To the extent Plaintiff is seeking damages against Defendant in his individual capacity for alleged constitutional violations, Defendant contends those claims should also be dismissed. (*See* Mov. Br. at 16 n.5). Specifically, Defendant acknowledges that pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court has allowed a plaintiff to sue a federal

---

*e.g.*, *Mallard*, 2015 WL 2092545, at *7–9 (concluding a USPS employee plaintiff's "WPA claim must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction" and not reaching whether the plaintiff "alleged facts sufficient to survive dismissal under Rule 12(b)(6) or whether she exhausted her administrative remedies"). However, the Court notes that even if Plaintiff could bring such a claim against Defendant, that claim would be dismissed for failure to exhaust administrative remedies as Plaintiff does not allege and has not shown that she exhausted administrative remedies with respect to her WPA claim. The Third Circuit has stated that "[t]he Civil Service Reform Act ('CSRA') provides the exclusive remedy for claims brought pursuant to the WPA" and "[u]nder no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." *Fleeger*, 221 F. App'x at 115–16 (alteration in original) (quoting *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002)). Here, Plaintiff has not alleged or shown that she pursued her administrative remedies under the CSRA with respect to her WPA claim (*see* Am. Compl.; Opp. Br.), and Plaintiff also did not include any WPA claim in her EEOC Complaint (*see* EEOC Compl.).

employee in their individual capacity for constitutional violations in three limited circumstances, but asserts that he does not construe Plaintiff's Amended Complaint as raising any claims against Defendant in his individual capacity, nor does Plaintiff request the Court treat her constitutional claims as being brought under *Bivens*.  (*Id.*).  Alternatively, Defendant argues Plaintiff's constitutional claims should be dismissed for failure to state a claim and failure to exhaust administrative remedies because her "[EEOC Complaint] in EEO Case No. 1C-631-0042-22 establishes she failed to raise any claims of whistleblowing or constitutional claims."[8]  (*Id.* at 17–19; *see also* Reply Br. at 8–10).

In opposition, Plaintiff asserts (i) she is only bringing a First Amendment retaliation claim[9] (*see* Opp. Br. at 1–3, 7 & 12), and (ii) that "Congress enacted a general waiver of sovereign immunity" for the USPS, pursuant to the Postal Reorganization Act of 1970, 39 U.S.C. § 401 (Opp. Br. at 10).  Accordingly, Plaintiff contends Defendant is not immune from Plaintiff's constitutional claims.  (*Id.*).

In reply, Defendant counters that Plaintiff "fails to address the Third Circuit case law

---

[8]      In support of its argument, Defendant cites to *Bush v. Lucas*, 462 U.S. 367 (1983) (Mov. Br. at 17 n.6), where the Supreme Court declined to fashion a judicial remedy allowing a federal employee to recover monetary damages from a supervisor who allegedly discharged the employee in retaliation for his exercise of First Amendment rights because the CSRA provided "an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures . . . by which improper action may be redressed."  462 U.S. at 385. Defendant contends that following *Bush*, courts have concluded federal employees may not maintain actions for monetary damages for violations of constitutional rights arising out of the employment relationship, to the extent the CSRA applies and provides remedies.  (Mov. Br. at 17 n.6).  Indeed, the Third Circuit has held that a former USPS employee may not maintain a cause of action for First Amendment retaliation seeking monetary damages against the USPS on this basis.  *See Ruddy*, 455 F. App'x at 285 ("As [plaintiff's] First Amendment retaliation claim arises from the context of his federal employment [at USPS], the CSRA is his sole remedy and we hold that the District Court lacked subject matter jurisdiction to hear that claim." (citing *Sarullo, v. U.S. Postal Serv.*, 352 F.3d 789, 795–97 (3d Cir. 2003))).

[9]      The Court notes that Plaintiff's Amended Complaint alleges a First Amendment *discrimination* claim (*see* Am. Compl. at 4), whereas Plaintiff's opposition brief appears to clarify that she is instead alleging a First Amendment *retaliation* claim (*see* Opp. Br. at 1–3, 7 & 12).  For purposes of this Opinion, it does not matter whether the Court considers Plaintiff's First Amendment claim as a discrimination claim or a retaliation claim because either way, that claim must be dismissed for the reasons discussed herein.

holding that the United States—including the [USPS]—has not waived sovereign immunity for constitutional claims." (Reply Br. at 1 & 7–8). Defendant notes that Plaintiff instead attempts to predicate her First Amendment retaliation claim under 42 U.S.C. §§ 1983, 1985, & 1986, but the cases that Plaintiff cites in support of this argument are inapposite because Plaintiff does not allege any facts supporting a cause of action under §§ 1983, 1985, or 1986 in her Amended Complaint.[10] (*Id.* at 3–4; *see generally* Am. Compl.). Additionally, Defendant asserts that the Court can dismiss Plaintiff's Fourteenth Amendment claim as unopposed because Plaintiff clarified that she is only asserting a First Amendment claim, and she failed to address Defendant's arguments regarding her Fourteenth Amendment claim. (*See* Reply Br. at 3). Defendant also states that to the extent Plaintiff is attempting to resurrect her Title VII claim, she has failed to cure the deficiencies the Court identified in her Complaint and thus fails to plausibly allege a Title VII claim. (*Id.* at 4–5).

For the reasons set forth below, the Court agrees with Defendant and finds that Plaintiff's constitutional claims must be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim and/or failure to exhaust administrative remedies.

As an initial matter, Plaintiff appears to abandon her Fourteenth Amendment claim in opposition to Defendant's Motion and does not address any of Defendant's arguments with respect to that claim. Accordingly, that claim is **DISMISSED**. To the extent Plaintiff did not intend to abandon that claim, it would be dismissed for the same reasons as Plaintiff's First Amendment claim discussed below.

---

[10]    Further, the Court dismissed Plaintiff's § 1983 claims asserted in her initial Complaint because she did not allege any of the defendants were acting under the color of *state* law, as opposed to *federal* law (*see* D.E. No. 29 at 12–13), and Plaintiff's Amended Complaint fails to cure this deficiency (*compare* Compl., *with* Am. Compl.). Additionally, the Court agrees with Defendant that Plaintiff has not plausibly alleged facts in her Amended Complaint that support a cause of action under §§ 1983, 1985, or 1986. (*See* Reply Br. at 3–4).

### i.    Sovereign Immunity

"The doctrine of sovereign immunity bars all suits against the United States except where such immunity is explicitly waived by Congress." *Castoran v. Pollak*, No. 14-2531, 2017 WL 4805202, at *4 (D.N.J. Oct. 25, 2017) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). "[A]bsent a waiver, sovereign immunity shields from suit the United States," federal agencies, and federal "employees sued in their official capacities." *Balice v. United States*, 763 F. App'x 154, 156 (3d Cir. 2019) (first citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); then citing *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 94 (3d Cir. 1995); and then citing *Chinchello v. Fenton*, 805 F.2d 126, 130 n.4 (3d Cir. 1986)). In bringing a constitutional claim against the USPS or Postmaster General, a plaintiff must "identify [a] waiver of sovereign immunity that would give the [district court] subject matter jurisdiction over her Complaint." *See Kassin*, 2011 WL 6002836, at *3. "Neither the United States nor its agencies have waived sovereign immunity for constitutional claims." *Balice*, 763 F. App'x at 156 (citing *United States v. Testan*, 424 U.S. 392, 400–02 (1976)); *see also Castoran*, 2017 WL 4805202, at *4 (dismissing a plaintiff's constitutional claims against the USPS, explaining that "the United States Post[al] Service has not waived sovereign immunity for constitutional claims").

"[T]he Postal Service enjoys federal sovereign immunity absent a waiver." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006). The Postal Reorganization Act ("PRA") "generally waives the immunity of the Postal Service from suit by giving it the power to sue and be sued in its official name." *Id.* (citation modified); *see also Haney v. Brennan*, No. 16-6186, 2018 WL 11486309, at *3 (E.D. Pa. Jan. 3, 2018) ("Under the Postal Reorganization Act of 1970 ('PRA'), the Postal Service has the power 'to sue and be sued in its official name.' This section has been recognized as a broad but not unlimited consent on the part of the United States to suits against the Postal

Service. The waiver of immunity applies unless the suit is 'not consistent with the statutory or constitutional scheme, [where] an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or [where] for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense.'" (alterations in original) (citations omitted)).  However, notwithstanding the PRA, courts in the Third Circuit have dismissed constitutional claims against the USPS for lack of subject matter jurisdiction.  *See, e.g.*, *Kassin*, 2011 WL 6002836, at *3 (dismissing plaintiff's constitutional claims against the USPS, Postmaster General, Attorney General of the United States for lack of subject matter jurisdiction because plaintiff failed to "identify any potential waiver of sovereign immunity that may correspond to [plaintiff's] claim"); *Riley v. Potter*, No. 08-5167, 2010 WL 125841, at *5 (D.N.J. Jan. 7, 2010) (dismissing constitutional claims against the USPS "[b]ecause the United States government has not waived sovereign immunity in this case"); *Castoran*, 2017 WL 4805202, at *5 ("Because the United States Postal Service, a federal agency, has not waived its sovereign immunity, [p]laintiff's constitutional claims against the United States Postal Service must be dismissed.").

Here, Plaintiff fails to address this Third Circuit case law and Defendant's arguments that the USPS has not waived sovereign immunity for constitutional claims, nor has Plaintiff cited to any contrary legal authority in support of its position that the USPS has waived sovereign immunity for constitutional claims and specifically for a First Amendment retaliation claim. Accordingly, the Court finds Plaintiff's constitutional claims against Defendant must be **DISMISSED** for lack of subject matter jurisdiction.

Additionally, "[a]lthough federal courts have exercised jurisdiction to hear nonstatutory claims under special circumstances, *e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

*Narcotics,* 403 U.S. 388 (1971), these are not present when a statutory scheme provides adequate relief, revealing a congressional intent to limit the available remedies." *Stevenson v. U.S. Postal Serv.*, 316 F. App'x 145, 147 (3d Cir. 2009) (first citing *Schweiker v. Chilicky*, 487 U.S. 412 (1988); and then citing *Bush*, 462 U.S. 367). The CSRA is such a statute. *See id.* "It provides 'the full scheme of remedies available' to federal employees in cases arising out of the employment context." *Id.* (quoting *Sarullo*, 352 F.3d at 795). Thus, where a plaintiff's nonstatutory *Bivens* claim arises out of the employment context, the court does not have subject matter jurisdiction to consider its merits. *See id.* As Defendant notes, in *Bush v. Lucas*, "the Supreme Court declined to create a judicial remedy allowing a federal civil servant to recover money damages from a supervisor for a retaliatory discharge for having exercised his First Amendment rights where the CSRA provided 'comprehensive procedural and substantive provisions giving meaningful remedies against the United States' for employment-related claims" and "Courts have concluded that, to the extent that the CSRA does apply and provides remedies, a federal employee may not maintain a separate action for money damages." (Mov. Br. at 17 n.6 (citations omitted)).

For example, in *Ruddy v. United States Postal Service*, the Third Circuit affirmed the district court's dismissal of a plaintiff's First Amendment retaliation claim as precluded under the CSRA, concluding that because the plaintiff's "First Amendment retaliation claim ar[ose] from the context of his federal employment, the CSRA [wa]s his sole remedy" and holding "that the District Court lacked subject matter jurisdiction to hear that claim." 455 F. App'x at 285; *see also Semper v. Gomez*, 747 F.3d 229, 237 (3d Cir. 2014) (stating "it is undisputed that the CSRA precludes current or former federal employees from bringing a *Bivens* damages action for alleged constitutional violations arising out of the employment context"); *Sarullo*, 352 F.3d at 797 (holding the district court lacked subject matter jurisdiction to hear a former USPS employee's *Bivens* claim

because it arose in the employment context for which "the CSRA provide[d] him with his sole remedy" and accordingly that "claim was barred by the comprehensive statutory scheme provided in the CSRA"); *Marley v. Donahue*, 133 F. Supp. 3d 706, 718–19 (D.N.J. 2015) (dismissing *with prejudice* a former USPS employee's constitutional claims "stemming from her allegations of workplace discrimination and/or retaliation" because the court found those "constitutional claims solely ar[o]se out of her allegations of workplace discrimination and retaliation" (citing cases)).

Similarly here, because Plaintiff's constitutional claims arise solely out of her allegations of discrimination and/or retaliation during her time of employment with the USPS, the Court finds it lacks subject matter jurisdiction over those claims, and accordingly those claims must be **DISMISSED**.

### ii.    Failure to Exhaust Administrative Remedies

Even assuming the Court had subject matter jurisdiction over Plaintiff's constitutional claims and/or that the USPS somehow waived sovereign immunity as to those claims, those claims would alternatively be dismissed for failure to state a claim and/or failure to exhaust administrative remedies.

"When Congress establishes what it deems to be adequate remedial mechanisms for constitutional violations, additional remedies should not be judicially created." *Cox v. Henzy*, No. 96-0583, 1997 WL 164270, at *2 (E.D. Pa. Apr. 1, 1997) (citing *Schweiker*, 487 U.S. at 423), *aff'd*, 124 F.3d 186 (3d Cir. 1997). "[U]nder *Bush* and its *sequelae*, federal employees may be barred from bringing suit for matters covered by a comprehensive remedial scheme, even though the statutory scheme does not afford complete relief." *Id.* (citing cases). In a variety of contexts, "the Supreme Court has concluded 'that a precisely drawn, detailed statute pre-empts more general remedies.'" *Marley*, 133 F. Supp. 3d at 718 (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820,

835 (1967)). "Indeed, extant authority reflects that Title VII, the ADEA, and the Rehabilitation Act provide the *exclusive* remedy for claims of discrimination and/or retaliation in federal employment, and foreclose a federal employee plaintiff from asserting parallel constitutional claims." *Id.* (emphasis in original) (citing cases); *see also Wilson v. U.S. Postal Serv.*, 814 F. App'x 719, 721 (3d Cir. 2020) ("Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, and the regulations promulgated thereunder, create 'the exclusive remedy for federal employees who allege discrimination in the workplace.'" (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020–21 (3d Cir. 1997))); *Stevenson*, 316 F. App'x at 147 (noting "Title VII and the Rehabilitation Act provide the exclusive remedies . . . for redressing discrimination in federal employment"). "Critically, [] these claims are subject to extensive exhaustion requirements and limitations periods[.]" *Marley*, 133 F. Supp. 3d at 715. "Specifically, a federal employee seeking redress for unlawful workplace discrimination and/or retaliation must first exhaust administrative remedies against the federal employer prior to filing suit in federal court." *Id.* (citing cases).

Additionally, the CSRA "prohibits federal employers from taking adverse actions against employees because of 'the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation.'" *Ruddy v. U.S. Postal Serv.*, No. 09-1984, 2011 WL 1043339, at *4 (M.D. Pa. Mar. 18, 2011) (quoting 5 U.S.C. § 2302(b)(9)(A)), *aff'd*, 455 F. App'x 279 (3d Cir. 2011). "The CSRA provides remedies for employees subject to any prohibited personnel practice, including First Amendment retaliation." *Id.* (citing 5 U.S.C. § 1214). In *Bush v. Lucas*, the Supreme Court held that for federal employees who contend their supervisors violated their First Amendment rights, "where claims 'arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, . . . it would be inappropriate for us to supplement that regulatory scheme with a

new judicial remedy.'" *Ruddy*, 455 F. App'x at 285 (alteration in original) (quoting *Bush*, 462 U.S. at 368, 390).

Further, the PRA, 39 U.S.C. § 201 *et seq.*, "sets forth 'a comprehensive scheme governing employment relations within the Postal Service.'" *Cox*, 1997 WL 164270, at *1 (quoting 39 U.S.C. §§ 1001–11 & 1202–09).  The PRA "incorporates Chapter 75 of the CSRA, 5 U.S.C. §§ 7501 *et seq.*, which establishes procedural safeguards for employees sustaining adverse personnel actions" and which "is also a comprehensive statutory scheme" that "governs the administrative and judicial review of adverse personnel actions against federal employees." *Id.* (citing *United States v. Fausto*, 484 U.S. 439, 443 (1988)).

In determining whether a plaintiff "was required to exhaust her administrative remedies," the relevant test "is whether the acts alleged in the subsequent [district court complaint] . . . are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Fleeger*, 221 F. App'x at 116 (alterations in original) (quoting *Antol*, 82 F.3d at 1295); *see also Waiters v. Parsons*, 729 F. 2d 233, 237 (3d Cir. 1984).  "An EEO complaint does not encompass a given claim merely because investigation would reveal facts that could support the given claim." *Fleeger*, 221 F. App'x at 116 (citing *Antol*, 82 F.3d at 1296).  Instead, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 453 (3d Cir. 2006)).  This means a "[p]laintiff must explicitly raise and pursue [a] WPA claim in [her] EEOC filing in order to qualify as an exhaustion of [] administrative remedies." *Baig*, 2011 WL 2214660, at *5 (citing *Fleeger*, 221 F. App'x at 116).  This is so "[e]ven if Plaintiff's filings with the EEOC . . . contained sufficient factual allegations to support a WPA claim." *Id.* (citing *Fleeger*, 221 F. App'x at 116).

The Third Circuit "recognizes a modification to the exhaustion requirement[,]" which "excuses a plaintiff from filing a second administrative complaint of discrimination when that complaint can reasonably be expected to grow out of the initial charge of discrimination and the plaintiff can still bring suit on the earlier complaint, but this exhaustion exception is narrow, however, and dependent upon the fact that any new acts occurred during the pendency of the EEOC review process." *Green v. Potter*, 687 F. Supp. 2d 502, 515 (D.N.J. 2009) (citation modified), *aff'd sub nom.*, *Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174 (3d Cir. 2011).

Here, Title VII, the PRA, and/or the CSRA provide statutory remedies for Plaintiff's constitutional claims of discrimination and/or retaliation arising from her former employment with the USPS, but Plaintiff has not alleged or shown that she has exhausted her administrative remedies under any of these statutes or otherwise with respect to these claims. (*See generally* Am. Compl.; Opp. Br.; EEOC Compl.). Plaintiff's EEOC Complaint describes a "harassment - non-sexual" incident between Plaintiff and Yolanda Gross that occurred on November 5, 2021 (*see* EEOC Compl.), whereas Plaintiff's Amended Complaint alleges discrimination and/or retaliation based on events that occurred in January 2022 (*see* Am. Compl. at 2–4). Thus, Defendant argues Plaintiff's constitutional claims should be dismissed for failure to exhaust administrative remedies. (Mov. Br. at 17–19; Reply Br. at 8–10). Plaintiff concedes that exhausting administrative remedies is a prerequisite to bringing suit in a federal district court but contends that her constitutional claims are within the scope of her EEOC Complaint and/or that she should be excused from exhausting her administrative remedies. (Opp. Br. at 10–12). However, in support of this argument, Plaintiff relies on cases involving Title VII claims (*id.* at 10–11), which Plaintiff explicitly did *not* assert in her Amended Complaint (*see generally* Am. Compl.). Accordingly, those cases do not support Plaintiff's argument with respect to her WPA retaliation and constitutional claims. Indeed,

Plaintiff does not dispute that she failed to include any specific claims of retaliation or constitutional claims in her EEOC Complaint or otherwise during the administrative remedies process. (*See* Opp. Br.). Additionally, as Defendant notes, the alleged January 2022 events that led to the alleged retaliation are not "new acts" that could reasonably be expected to grow out of Plaintiff's EEOC charge of discrimination because those events happened *before* she filed her EEOC Complaint in February 2022. (Reply Br. at 10 (citing *Waiters*, 729 F. 2d at 237)).

Therefore, the Court finds that Plaintiff has failed to exhaust her administrative remedies with respect to her whistleblower retaliation and constitutional claims as Plaintiff failed to raise those claims in her EEOC Complaint, and it is undisputed Plaintiff did not otherwise file a separate formal EEOC complaint for these claims. *See Baig*, 2011 WL 2214660, at *1 n.2, *5 (finding plaintiff did not raise whistleblower retaliation claim in EEOC filing where plaintiff's EEOC Complaint alleged only race and age discrimination). Plaintiff's alleged retaliation claims based on events that occurred in January 2022 are not encompassed by, nor within the scope of, Plaintiff's EEOC Complaint that involved a separate alleged harassment incident that occurred several months before in November 2021. Additionally, Plaintiff has not alleged that Title VII and/or the CSRA are inapplicable to her whistleblower retaliation and constitutional claims. (*See* Am. Compl.; Opp. Br.). Indeed, it appears those statutes provide the *exclusive* remedies for Plaintiff's discrimination and/or retaliation claims. *See Marley*, 133 F. Supp. 3d at 718; *Ruddy*, 455 F. App'x at 285; *Fleeger*, 221 F. App'x at 115–16 (citation omitted); *Wilson*, 814 F. App'x at 721 (citation omitted); *Stevenson*, 316 F. App'x at 147. Yet Plaintiff has not alleged or shown that she exhausted her administrative remedies under those statutes with respect to those claims. Additionally, Plaintiff has not cited any other legal authority that would permit her to separately assert such claims against Defendant. Further, Plaintiff has also not shown how or why she should be excused

from failure to exhaust her administrative remedies.

Thus, Plaintiff's constitutional claims must, in the alternative, be dismissed for failure to exhaust administrative remedies and/or failure to state a claim. *See Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174, 177–78 (3d Cir. 2011) (noting failure to exhaust administrative remedies "is typically fatal to a civil claim" (citing *Robinson*, 107 F.3d at 1021)). Accordingly, Plaintiff's constitutional claims in Count II of the Amended Complaint are **DISMISSED**.[11]

Lastly, because Plaintiff previously had leave to amend her Complaint and again fails to plausibly state a claim, and because it appears that any attempt to amend would be futile, the Court concludes Plaintiff's Amended Complaint should be **DISMISSED** *with prejudice*. *See, e.g.*, *Grohs v. Fratalone*, No. 13-7870, 2015 WL 6122147, at *6 (D.N.J. Oct. 16, 2015) (dismissing federal claims *with prejudice* where the court provided plaintiff two opportunities to sufficiently state a claim and where the alleged claims "re-pleaded in the amended complaint add[ed] defendants or alternative legal theories, but [we]re based on the same facts or claims" as in the original complaint and did not remedy the deficiencies previously identified by the court).

## IV.    CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiff's Amended Complaint is **DISMISSED** *with prejudice*. An appropriate Order follows.

---

[11]    To the extent Plaintiff is attempting to revive her Title VII claim through her opposition to Defendant's Motion (*see* Opp. Br. at 6–7 & 11–12), that attempt is improper. "It is well-settled that Plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion." *Ibrahim v. DeFilippo*, No. 19-5021, 2021 WL 753898, at *8 (D.N.J. Feb. 26, 2021). "Indeed, '[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Id.* (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Moreover, even if it was proper, that claim would be dismissed for the reasons set forth in the Court's September 3, 2024 Opinion (*see* D.E. No. 29) because Plaintiff failed to cure the deficiencies the Court identified with respect to her previously alleged Title VII claim; instead, Plaintiff's Amended Complaint contains the same factual allegations as her initial Complaint (*compare* Compl., *with* Am. Compl.), reframed as different causes of action.

**Dated: September 17, 2025**                    _/s/ Esther Salas_
                                                    **Esther Salas, U.S.D.J.**